```
 1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF LOUISIANA
 2                          MONROE DIVISION

 3
   UNITED STATES OF AMERICA,      :   DOCKET NO. 3:19CR00033
 4
                      PLAINTIFF,  :
 5
   VERSUS                         :   June 3, 2020
 6
                                  :
 7 CHRISTOPHER JOE STAMPER,
                                  :
 8                    DEFENDANT.      Monroe, Louisiana
   _____
 9
           REPORTER'S OFFICIAL TRANSCRIPT OF SENTENCING HEARING
10               BEFORE THE HONORABLE TERRY A. DOUGHTY
                      UNITED STATES DISTRICT JUDGE
11

12

13 APPEARANCES:

14 FOR THE PLAINTIFF:  MS. JESSICA CASSIDY
                       ASSISTANT UNITED STATES ATTORNEY
15                     300 Fannin Street, Suite 3201
                       Shreveport, Louisiana
16

17

18 FOR THE DEFENDANT:  MR. WALTER M. CALDWELL, IV
                       ATTORNEY AT LAW
19                     4007 White's Ferry Road
                       West Monroe, Louisiana
20

21

22                     DEBBIE LOWERY, RPR, CCR
                       Federal official Court Reporter
23                     201 Jackson Street, Suite 312
                       Monroe, Louisiana 71201
24

25 Proceedings recorded by mechanical stenography, transcript
   produced by computer-aided transcription.
```

1

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2                    THE COURT:  We're ready to proceed.  Okay.  All
 3    right.  This is United States of America versus Christopher Joe
 4    Stamper.  This is case number 3:19-33-01.  This matter is set for
 5    -- by the Court for sentencing today.
 6         If we would note the appearance in the record of each
 7    person that's participating in video conference starting with the
 8    government.
 9                    MS. CASSIDY:  Yes, Your Honor.  Jessica Cassidy
10    on behalf of the government.  And present with the government is
11    Palmer Allen, special agent with the FBI.
12                    THE COURT:  Okay.
13                    MR. CALDWELL:  Your Honor, Walter M. Caldwell,
14    IV, on behalf of the defendant Christopher Stamper.
15                    THE COURT:  All right.  And I note also that
16    the probation officer in this matter is Mr. Mark Miller, and he's
17    present.
18                    PROBATION OFFICER:  Yes, Your Honor.
19                    THE COURT:  And probation officer Jay Garner is
20    present and Mr. Casey Stevens is present also.  Okay.  The --
21                    MS. CASSIDY:  Your Honor.
22                    THE COURT:  Yes.
23                    MS. CASSIDY:  Your Honor, before we begin, I
24    did want to just note for the record that Special Agent Allen did
25    speak with the victim's family last night and made them aware of
```

```
 1   the sentencing hearing and their right to participate and that
 2   they could do so via Zoom.  They are aware, but they declined to
 3   participate.
 4                   THE COURT:  Okay.  Thank you, Ms. Cassidy.
 5        All right.  If anyone -- hopefully everyone can hear me.
 6   If you can hear me, raise your hand, please.  All right.  Okay.
 7        All right.  Ms. Campbell, is the government ready to
 8   proceed?
 9                   MS. CASSIDY:  Yes, Your Honor.
10                   THE COURT:  Why did I call you Ms. Campbell?
11   Ms. Cassidy.  I'm sorry.
12        Okay.  And, Mr. Caldwell, is Mr. Stamper ready to proceed?
13                   MR. CALDWELL:  Yes, Your Honor, we are prepared
14   to proceed -- proceed in this matter.
15                   THE COURT:  All right.  Let me know if you have
16   -- something happens and you have trouble hearing me.  And,
17   Mr. Stamper, if you need to consult with Mr. Caldwell, please stop
18   me immediately and we'll take a break to allow you to talk with
19   him privately.
20                   MS. CASSIDY:  Your Honor, I believe we may have
21   lost Mr. Stamper's family member from the call.
22                   THE COURT:  No.
23                   MS. CASSIDY:  No?
24                   THE COURT:  No, I think they're on.
25                   MS. CASSIDY:  Okay.  I apologize.  I just
```

3

1    couldn't see them on my screen.  So I apologize, Your Honor.

2                    THE COURT:  Okay.  That's good.

3        All right.  Mr. Stamper, can you hear me?

4                    THE DEFENDANT:  Yes, sir.  I have one question.

5                    THE COURT:  Okay.  Go ahead.

6                    THE DEFENDANT:  Is there any way that you can

7    recommend that I go to Lexington Medical Center?

8                    MR. CALDWELL:  Your Honor, I'm going to address

9    that in our comments on the objections to the PSIR.

10                   THE COURT:  Okay.  Your attorney is going to

11   address that.  We'll wait till we do the sentencing.  He's going

12   to address that for you.  Okay?

13                   THE DEFENDANT:  Yes, sir.

14                   THE COURT:  All right.  One thing I need

15   -- I'll go through the consent to the video conference first.  I

16   want to talk about why we're holding this sentencing by video

17   teleconference.

18       At this time, as everybody knows, the Word Health

19   Organization and the Centers For Disease Control and Prevention

20   have declared a global pandemic related to the spread of the

21   COVID-19 virus known as the Coronavirus.

22       In light of this pandemic, the President of the United

23   States has declared a national emergency, and the Louisiana

24   governor has declared a statewide public health emergency.

25       The CDC and all health authorities have recommended social

4

1    distancing as a means of limiting community spread of the virus.

2    While Louisiana has lifted its stay-at-home order and moved into

3    Phase 1 reopening, it is still recommended that people stay at

4    home as much as possible and keep social distancing.

5           A gathering of all of us in the courtroom would risk the

6    health and safety of the those who participate and defeat the call

7    for social distancing.  Ordinarily a defendant must be present at

8    his sentencing pursuant to Federal Rule of Criminal Procedure

9    Article 43.

10          However, the Coronavirus Aid, Relief and Economic Security

11   Act, better known as the CARES Act, authorize certain criminal

12   proceedings to be conducted by video conference and teleconference

13   under certain circumstances and with the consent of the defendant

14   after consultation with counsel.

15          Both the Judicial Conference of the United States and the

16   Chief Judge of the Western District of Louisiana have issued

17   findings that felony guilty pleas and felony sentencings cannot be

18   conducted in person without seriously jeopardizing public health

19   and safety.

20          I'm conducting this proceeding pursuant to the authority

21   provided by the CARES Act and the standing orders issued for this

22   court pursuant to that Act.  I find the sentencing in this

23   particular case cannot be further delayed without serious harm to

24   the interest of justice.

25          The defendant entered his plea on December the 3rd of 2019.

1    The interest of justice dictate that the sentencing proceed by

2    video conference with the consent and permission of the defendant

3    Christopher Joe Stamper.

4            Is that correct, Mr. Stamper?

5                        THE DEFENDANT:  Yes, sir.

6                        THE COURT:  Okay.  And did you talk to

7    Mr. Caldwell about your decision to be present in the courtroom by

8    video conference instead of directly in the courtroom?

9                        THE DEFENDANT:  Yes, sir.

10                       THE COURT:  And did you sign the waiver of your

11   right to be present in the courtroom today?

12                       THE DEFENDANT:  Yes, sir.

13                       THE COURT:  Okay.

14                       MR. CALDWELL:  For the record, Your Honor, I

15   have filed that waiver into the record this morning.

16                       THE COURT:  Okay.  Thank you.

17        Does the government consent to this sentencing being held

18   by video conference?

19                       MS. CASSIDY:  Yes, Your Honor.

20                       THE COURT:  And, Mr. Caldwell, I assume the

21   defense also consents.

22                       MR. CALDWELL:  We consent, Your Honor.

23                       THE COURT:  I find this hearing is being

24   conducted with the defendant's consent after appropriate

25   consultation with defense counsel and with the consent of the U.S.

1   Attorney's Office.  A court reporter is participating remotely and
2   will transcribe these proceedings.
3         As always, this is a public proceeding open to the public.
4   The public is welcome to participate in the proceeding by video
5   conference.  All those who are granted access to this proceeding
6   are reminded of the general prohibition against photographing,
7   recording and rebroadcast of court proceedings.  Violations of
8   these prohibitions will result in sanctions, including removal of
9   the court-issued media credentials, restricted entry to future
10  hearings, denial of entry to future hearings, and any other
11  sanctions deemed necessary by the Court.
12        All right.  Are the defendant and defense counsel ready to
13  proceed in this matter?
14                  MR. CALDWELL:  We are, Your Honor.
15                  THE COURT:  Ms. Cassidy, are you able to start
16  and ready to proceed?
17                  MS. CASSIDY:  Yes, Your Honor.
18                  THE COURT:  Okay.  And I assume the -- has the
19  defendant and the defense counsel received a copy of the
20  presentence report?
21                  MR. CALDWELL:  We have, Your Honor, reviewed it
22  with the defendant; and we have filed our objections in the
23  record.
24                  THE COURT:  Okay.  And, Ms. Cassidy, has the
25  government received that report?

 1                    MS. CASSIDY:  Yes, Your Honor.

 2                    THE COURT:  And I understand the defendant has

 3      seven objections.  And prior to taking up those objections, one

 4      thing I need to address is that there is pending -- Mr. Caldwell,

 5      did you and Mr. Stamper discuss -- I know Mr. Stamper at one point

 6      had filed -- had filed a motion, that's Number 71, I believe, a

 7      motion to dismiss Mr. Caldwell.

 8           My understanding, Mr. Stamper, is you no longer wish to

 9      proceed on that.  Is that correct at this time?

10                    THE DEFENDANT:  Yes, sir.  Yes, sir, at this

11      time.

12                    THE COURT:  Okay.  You wish to -- you wish to

13      have Mr. -- Mr. Caldwell proceed as your attorney.  Correct?

14                    THE DEFENDANT:  Yes, sir.

15                    THE COURT:  Okay.  So what I'm going to do is

16      dismiss that, which I believe to be Number 71, Docket Number 71,

17      which is the motion filed by Mr. Stamper to dismiss counsel.  So

18      that will be dismissed at this time.

19           All right.  As to the seven objections to the presentence

20      report, I know that, Mr. Caldwell, you had filed a lengthy

21      discussion and presentence report -- I mean, a memorandum in

22      regard to these objections.  And Ms. Cassidy has also filed some

23      documents related to that.

24           Did you wish to argue those objections or -- I know we

25      discussed them yesterday.

1              MR. CALDWELL:  I'm sorry, Your Honor.  Your
2  Honor, yes, I would argue that, you know, we rest on our pleadings
3  as far as the objections go.  And we also rest on our pleadings as
4  far as our motion for variance and for a sentencing departure in
5  this particular matter, Your Honor.
6        And the only thing that I would say now is that there are
7  two cases cited within our brief that show that defendants that
8  received approximately the same guideline range as proposed for
9  this defendant who committed much more egregious crimes than
10 Mr. Stamper has and he is looking at the same range.
11       I would say to the Court that those are cases that are
12 similarly situated to the defendant except that they are even more
13 egregious, and that this defendant is being -- would be receiving
14 too great of a sentence if he received up to the statutory maximum
15 in this particular matter.  But as they were sentenced 240 months
16 in each of those cases, and they actually engaged in molestation
17 of juveniles in those two cases, so we argue that.
18       In regards to our objections, staying on our objections
19 with the use, we argue that the use of the cross reference is
20 inappropriate in regards to production which --
21              COURT REPORTER:  I'm sorry.  Walt, back up.  In
22 regards to our objection with the use, I didn't hear all that.
23              MR. CALDWELL:  I'm not sure, but I'll start
24 over.
25       In regards to our objections about the use of the cross

1    reference 2G2 in this particular matter, we do not think it's

2    appropriate because the classic example productions are outlined

3    in the two cases where those individuals received a 240 month

4    sentence.  I think those are the classic example use for cross

5    reference here that moves this defendant away from a guideline

6    range of approximately 70 to 87 months up to 240 months -- over

7    and in excess of 240 months is inappropriate.  And we briefed that

8    in our objections.  We briefed that in our sentencing memorandum.

9         Likewise, Your Honor, we had also this defendant and we

10   have provided the case -- the Court with the Longoria case, and it

11   cites in regards to the defendant's acceptance of responsibility

12   and receiving points for that acceptance of responsibility.  And

13   we believe that the Longoria case clearly is in the defendant's

14   favor, and he should receive all three points for acceptance of

15   responsibility for his plea in this matter, and his offense level

16   should be adjusted for that reason.

17        Likewise, Your Honor, in regards to the defendant's

18   medicals I provided to the Court and U.S. Attorney's office

19   yesterday a request that the paragraphs 55 and 56 of the PSIR be

20   amended to include references to the evaluations that were done on

21   the defendant, one done by BOP and one by a private group that the

22   defendant obtained for his representation, both of which contained

23   medical information.  The page numbers were referenced in the

24   information that I provided showing his medical information.

25        We are asking that that be -- that those two documents be

1   appended under seal with the PSIR under seal so that BOP will have
2   that information to evaluate the defendant as far as placement at
3   a medical facility.
4        I understand that the Court cannot order the defendant to a
5   particular medical facility, but the Court can certainly make a
6   recommendation.  The defendant has researched the issue and feels
7   that there's a facility in Lexington, Kentucky that is appropriate
8   for his medical condition.  And so we would ask the Court to make
9   that recommendation along with that particular objection.
10              THE COURT:  Okay.  Ms. Cassidy, would you like
11   to respond to any of the objections?
12              MS. CASSIDY:  Yes, Your Honor.  First, the
13   government does not object to attaching under seal the requested
14   documents by Mr. Caldwell.  Next, I would like to point out that
15   the defendant committed this offense while on bond for a prior
16   child pornography offense.  I think that's noteworthy and
17   significant to the Court in issuing and fashioning a sentence
18   appropriate to him that even the threat of another criminal case
19   and possible period of imprisonment did not stop this conduct.
20        With regard to the cross reference, the government's laid
21   it out in its sentencing memorandum that this cross reference is
22   to be construed broadly and includes all instances where the
23   offense involves persuading, inducing and coercing a minor to
24   engage in sexually explicit conduct for the purpose of producing
25   any visual depiction of such conduct.

1          And in the opening of the government's sentencing
2  memorandum, the government gave the Court a glimpse of the many
3  times that the defendant coerced, persuaded, induced an
4  11-year-old to send him photos of herself in various stages of
5  undress.
6          I have Special Agent Palmer here who is prepared to testify
7  to the records from Mr. Stamper's communications with the victim
8  that we would ultimately introduce into evidence and ask that they
9  be filed under sealed.
10         And, lastly, Your Honor, before putting on Special Agent
11 Palmer, I just would like to call the Court's attention to the
12 case that I submitted to the Court and defense counsel yesterday,
13 *United States versus Flores* regarding acceptance of responsibility
14 points, and the Court's discretion to not award those, and the
15 factual similarities of *Flores;* and then the more egregious
16 conduct in this case that may warrant the Court to take away those
17 points.
18                 THE COURT:  Okay.  Would you like to put on
19 Mr. Palmer at this time, Ms. Cassidy?
20                 MS. CASSIDY:  Yes, Your Honor.  The government
21 would call Special Agent Palmer.
22                 THE COURT:  Okay.  Special Agent Palmer, if you
23 would raise your right hand and be sworn, please.
24                 COURT CLERK:  Can you hear me?
25                 AGENT PALMER:  I can hear you.

1    SPECIAL AGENT PALMER ALLEN, witness for the government, SWORN.

2                   THE COURT:   Okay.   Go ahead and proceed.

3                        DIRECT EXAMINATION

4    BY MS. CASSIDY:

5    Q.    Special agent, go ahead and state your name for the record.

6    A.    First name Palmer, P-A-L-M-E-R, last name Allen, A-L-L-E-N.

7    Q.    And you are employed with the FBI?

8    A.    That's correct.

9    Q.    How long have you been with the FBI?

10   A.    A little over 12 years.

11   Q.    And do some of your duties and obligations involve

12   investigating child pornography and child exploitation crimes?

13   A.    They do.

14   Q.    As part of your duties, did you investigate this defendant,

15   Christopher Stamper, for improper communications with an

16   11-year-old girl from Washington?

17   A.    I did.

18   Q.    And based upon your investigation, how did the defendant

19   meet the 11-year-old girl initially?

20   A.    They initially met on a game -- a gaming platform called

21   Avakin Life.

22   Q.    And did they ultimately begin communicating outside of

23   Avakin Life?

24   A.    They did.

25   Q.    And was that through the application TextNow?

1  A.     It was.

2  Q.     And as part of the investigation, did law enforcement issue

3  a search warrant to TextNow for Mr. Stamper's records?

4  A.     Yes.

5  Q.     Did you review those records?

6  A.     I did.

7  Q.     Were you able to identify the communications between the

8  defendant and the 11-year-old girl from those records?

9  A.     Yes, I was.

10  Q.     And during those -- Oh.  Excuse me.  Can you just briefly

11  describe the nature of the communications.

12  A.     Yes.  They were, you know, just normal chatting back and

13  forth in portions of it.  And then it was also highly sexually

14  charged in others.

15  Q.     And during the communications, did the 11-year-old girl

16  send nude photos of herself to the defendant?

17  A.     She did.

18  Q.     And did she send nude photos of herself at the request of

19  the defendant?

20  A.     She did.

21  Q.     And I've previously provided to you, the Court, and defense

22  counsel what was marked as Government Exhibit 1.  Have you had an

23  opportunity to review those documents?

24  A.     I have.

25  Q.     And do these documents contain the portion of the texts in

1    our records of the communications between the defendant and the

2    11-year-old?

3    A.      They do.

4                       MS. CASSIDY:  Okay.  Your Honor, at this time,

5    the government would move to admit under seal Government Exhibit

6    1.

7                       THE COURT:  Any objection, Mr. Caldwell?

8                       MR. CALDWELL:  Your Honor, I would object

9    insofar as the numbers are redacted, particularly since this is

10   being placed under seal, the numbers not being redacted would be

11   beneficial and I can address that through cross-examination of

12   Mr. Palmer.

13                      THE COURT:  Okay.  All right.  Let that

14   -- Okay.  I'll wait.  I will -- Okay.  I'll go ahead and allow it

15   to be filed at this time subject to your cross-examination.  Okay?

16                      MR. CALDWELL:  Okay.  Thank you, Your Honor.

17                      THE COURT:  Anything else, Ms. Cassidy?

18                      MS. CASSIDY:  No, Your Honor.

19                      THE COURT:  Mr. Caldwell, any

20   cross-examination?

21                      MR. CALDWELL:  Yes, Your Honor, I would like to

22   cross-examine Agent Palmer.

23                           CROSS-EXAMINATION

24   BY MR. CALDWELL:

25   Q.      Agent Palmer, in regards to Government Exhibit 1, during my

1  representation of Mr. Stamper, did I come to your office and

2  review a document that was similar to Government Exhibit 1 except

3  the telephone numbers were unredacted?

4  A.    Yes.

5  Q.    And when we look at the unredacted numbers, does it show

6  that the defendant (indiscernible) any other people --

7            COURT REPORTER:  I'm sorry, Walt.  Walt, back

8  up, please.  There's some kind of interference on you.

9            MR. CALDWELL:  Okay.  I'll slow down.

10  Q.    Mr. Palmer, through your investigation and looking at the

11  redacted numbers on the Government Exhibit 1, are there not some

12  conversations in that TextNow document that clearly illustrate

13  that they are -- they are actually the conversations with persons

14  other than with the minor?

15  A.    Again, you're breaking up a little bit.

16  Q.    I'm sorry.

17  A.    That's okay.  I think I get the gist of what you're asking.

18  Yes, the defendant did talk to other people via this text ap as

19  well.

20  Q.    Okay.  So wouldn't it be a more complete record if we had

21  the unredacted numbers in the -- in the record?

22  A.    I -- as far as completeness, I guess that is accurate, as

23  far as my understanding is Ms. Cassidy was introducing a portion

24  of these records, not the entirety of them.

25            MR. CALDWELL:  That's all my questions, Your

```
 1  Honor.
 2                    THE COURT:  Okay.  Any redirect, Ms. Cassidy?
 3                    MS. CASSIDY:  Yes, Your Honor, just to clarify
 4  and follow up on defense counsel's questioning.
 5                         REDIRECT EXAMINATION
 6  BY MS. CASSIDY:
 7  Q.     Special Agent Palmer, in reviewing these records, do these
 8  represent specifically the communications between the defendant
 9  and the 11-year-old girl?
10  A.     They do.
11  Q.     And so the other communications with numbers identified to
12  other individuals, those have been redacted from these records?
13  A.     That's correct.
14                    MS. CASSIDY:  Nothing further, Your Honor.
15                    THE COURT:  Okay.
16                    MS. CASSIDY:  And the government would move
17  again to introduce this under seal.
18                    MR. CALDWELL:  We reiterate our objection, Your
19  Honor.
20                    THE COURT:  What did you say, note your
21  objection?
22                    MR. CALDWELL:  I would reiterate my objection,
23  Your Honor.
24                    THE COURT:  Okay.  I'm going to order they be
25  filed under seal as they are.
```

```
 1          Okay.  Anything else, Ms. Cassidy?

 2                    MS. CASSIDY:  No, Your Honor.  Thank you.

 3                    THE COURT:  Okay.  All right.  I'll file in the

 4     record a -- my written ruling to these seven objections.  But just

 5     to summarize, I'm going to deny all of the objections except for

 6     Objection 4.  And I did read the case -- cases that both attorneys

 7     sent.  And I think they're -- you know, I'm not going to say this

 8     as a future rule that I'm going to do, because Mr. Stamper did not

 9     meet with probation.  And I think I want to reserve, if somebody

10     does that, to take away those points.

11          But in this specific case, under the specific facts of this

12     case, I'm going to grant the Objection Number 4, which deny the

13     two point reduction because he did plead guilty and he did admit

14     at that time that he -- that he did that.  He saved the government

15     time for trying the case and all that.  I do realize he filed some

16     other things after that.

17          But under the specific facts of this case, I'm going to

18     grant that, and give him back his two points.  You know, that --

19     and I'll deny all the other objections and I'll file in the record

20     written rulings.

21          Now, Ms. Cassidy, with regard to the initial one point,

22     what were you going to do with regard to that?

23                    MS. CASSIDY:  Your Honor, the government

24     awarded that point, or moved for that point subject to the plea

25     agreement and we'll maintain that.
```

1            THE COURT:  Okay.  So that results in minus

2    three points off the 40, which would result in 37.  So we'll go

3    through that in a minute.

4         And, as I indicated, I'll file these written objections

5    -- I mean, I'll file my ruling into the record.

6            MR. CALDWELL:  Your Honor, just for the record,

7    please take note of our objection to your rulings in this matter

8    regarding the other six objections that Your Honor has denied.

9            THE COURT:  Let those objections be noted.

10        Does defense counsel have anything they'd like to say in

11   mitigation of punishment at this time?

12           MR. CALDWELL:  No, Your Honor.  We did file our

13   briefs in this matter, and we think they cover adequately the

14   issues before the Court.

15           THE COURT:  Okay.  And let me say one other

16   thing, did -- and also to those factual statements contained in

17   the presentence report to which there is no objection, I adopt

18   these statements as findings of fact.

19        As to any controverted factual statements in the

20   presentence report, I resolved the dispute as previously stated.

21           THE COURT:  Okay.  And does -- Mr. Stamper, do

22   you wish to say anything yourself?  You have the right to.  I'll

23   listen to you if you want to say anything.  If you do not, that's

24   fine too, whatever you'd like to do.  Would you like to say

25   anything or offer anything in mitigation of punishment before

```
 1   sentence is imposed in this case?
 2                   THE DEFENDANT:  Yes, sir.  I ask for, please,
 3   for a lesser sentence so I can get back home to my wife and my
 4   kids.  They're split apart and they need me home.
 5                   THE COURT:  Okay.  All right.  Anything else?
 6                   THE DEFENDANT:  No, sir.
 7                   THE COURT:  Okay.  All right.  Ms. Cassidy,
 8   does the government have anything they'd like to say?
 9                   MS. CASSIDY:  No, Your Honor.
10                   THE COURT:  Okay.  All right.  This Court has
11   considered the United States Sentencing Commission Guidelines, and
12   I find the guideline applications are as follows:  With the
13   amendment, the offense level is 37.  The criminal history category
14   is I.  The guideline range would be 210 months to 262 months, but
15   note there's a 240 month maximum with regard to the statutory
16   maximum sentence.  Probation is not authorized, five years to life
17   of supervised release.  Restitution is not applicable in this
18   case.  And the fine amount would be 40,000 to $250,000, be a $100
19   special assessment.
20        The reasons for these guideline determinations are set
21   forth in the presentence report.  Having reviewed and considered
22   the guidelines, the factors listed in 18 U.S.C., Section 3553(a)
23   and the appropriate policy concerns, I shall now state my reasons
24   for imposing sentence.
25        In this case, I find that the guideline range, after
```

1    amendment to the presentence report, reasonably addresses the real

2    conduct of the defendant that underlies -- underlies his crime,

3    achieves the goals of Section 3553(a) and provides an appropriate

4    sentence.

5         So with that, that means that the request for a variance

6    that was filed is denied.  I will file written reasons into the

7    record regarding that.

8                  MR. CALDWELL:  Please note our objection, Your

9    Honor.

10                 THE COURT:  Okay.  Let that objection be noted.

11        It's the judgment of the Court that the defendant

12   Christopher Joe Stamper is hereby committed to the custody of the

13   Bureau of Prisons for a term of 240 months of imprisonment on

14   Count 1 of the superseding indictment.

15        This sentence was selected after considering the factors

16   contained in 18 U.S.C., Section 3553(a) concerning defendant's

17   criminal history, personal characteristics and involvement in the

18   instant offense.

19        Upon release from imprisonment, defendant shall be placed

20   on supervised release for a period of ten years.  Within 72 hours

21   of his release from custody, the defendant shall report to the

22   U.S. Probation Office in the district to which he is released.

23        While on supervised release, the defendant shall not commit

24   another federal, state or local crime; shall not possess a firearm

25   or other dangerous weapon and shall comply with the standard

1    conditions of supervision adopted by this Court.

2         The defendant shall cooperate in the collection of DNA as

3    directed by the U.S. Probation Office.  The defendant shall pay a

4    $100 special assessment to the Crime Victim Fund immediately.

5    Based on the defendant's financial condition, the Court finds the

6    defendant does not have the ability to pay a fine, and therefore,

7    a fine will not be ordered in this case.

8         The defendant shall comply with the requirements of the Sex

9    Offender Registration and Notification Act.  That's 34 U.S.C.,

10   Section 20911 et. seq. as directed by the probation officer, the

11   Bureau of Prisons or any state sex offender registration agency in

12   which he resides, works as a student or is convicted of a

13   qualifying offense.

14        The presentence report and other reliable sentencing

15   information indicates a low risk of substance abuse by the

16   defendant; therefore, the mandatory drug testing condition is

17   suspended.

18        The defendant shall abide by the following special

19   conditions of supervised release:

20        The defendant shall participate in a mental health

21   counseling and/or individual or group counseling at a facility

22   approved by the courts or the probation officer.

23        The defendant shall submit to a screening and/or assessment

24   to indicate the type of treatment needed.

25        The defendant shall comply with the rules and regulations

1 of the treatment agency and allow the probation officer, in

2 consultation with the agency, to adjust the modality, duration and

3 intensity of treatment as needed.

4     The defendant must participate in a sex offense specific

5 treatment program and follow the rules and regulations of that

6 program.  The probation officer will supervise the defendant's

7 participation in the program.  The defendant must pay the cost of

8 the program based on his then current income.

9     The defendant shall not associate with anyone under any

10 circumstances that he knows to be a sex offender, someone who

11 engages in sexual activity with children under 18 years of age or

12 someone who condones and/or supports the sexual abuse exploitation

13 of children under 18 years of age:

14     NAMBLA, BoyChat BoyLover Message Board, those are examples,

15 except while participating in sex offender mental health treatment

16 as approved by the probation officer or except for employment

17 purposes as approved by the probation officer.

18     The defendant shall not possess any photographs, paintings,

19 recorded material or electronically produced material that he or

20 she may use for the purpose of arousal of sexual interest in

21 children, nor shall he visit, frequent or remain about any place

22 where such material is available to him for the purpose of arousal

23 of sexual interest in children.

24     The defendant shall submit to polygraph testing at his own

25 expense, as directed by the probation officer, in order to

1   determine if he is in compliance with the conditions of

2   supervision or to facilitate sex offender treatment.  Defendant

3   shall be truthful during the polygraph evaluation.

4         All residence and employment shall be approved in advance

5   by the probation officer.  Defendant shall not participate in any

6   voluntary activities requiring unsupervised contact with children

7   under the age of 18 without the approval of the probation officer.

8         The defendant shall not possess or use a computer or any

9   other electronic device with access to the Internet or any other

10  online computer service at any location, including employment,

11  without the approval of the probation officer.

12        If allowed, the defendant must have attached monitoring

13  software approved by the probation officer at his cost.  The

14  defendant shall not possess or use any data encryption technique

15  or program designed to conceal material that is illegal or

16  prohibited by the probation officer.

17        Does the government want to dismiss the remaining counts of

18  the superseding indictment, Ms. Cassidy?

19                  MS. CASSIDY:  Yes, Your Honor.  The government

20  would move to dismiss all remaining counts.

21                  THE COURT:  Any objection, Mr. Caldwell?

22                  MR. CALDWELL:  No objection, Your Honor, by

23  Mr. Stamper.

24                  THE COURT:  All right.  Let those counts be

25  dismissed.  Do you have the specific counts before you, Ms.

1  Cassidy?

2            MS. CASSIDY:  Yes, Your Honor.  I want to make

3  sure I'm citing the correct ones since there has been a

4  superseding.

5            COURT CLERK:  Counts 2, 3 and 4 of the

6  superseding indictment.

7            MS. CASSIDY:  There you go, Your Honor, Counts

8  2, 3 and 4.  Thank you, madam clerk.

9            THE COURT:  All right.  Let those be dismissed.

10           THE DEFENDANT:  Excuse me, Your Honor, I have a

11  question.

12           THE COURT:  Okay.

13           THE DEFENDANT:  Are they saying I can't be

14  around my children?

15           THE COURT:  Around your children?

16           THE DEFENDANT:  Yes.

17           THE COURT:  I don't think that's what that's

18  saying.  I don't know.  Okay.  Let me finish this and then I'll

19  get your question.  I'm almost done, then we'll direct to that in

20  just a minute because I don't know what the custody situation is

21  or anything like that or the age even.  So let me finish and then

22  we'll address that.

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  At this time, I wish to advise you

25  you have the right to appeal your sentence and conviction.  If

1   you're unable to afford the services of an attorney, counsel will

2   be appointed to you.  Also if you cannot afford it, a transcript

3   of the record in this case will be prepared for appeal at the

4   government's expense.

5          And, also, in accordance with the Rules of Appellate

6   Procedure, you normally have 14 days from the date the judgment in

7   this case is entered to file your Notice of Appeal.

8          Do you understand that, Mr. Stamper?

9                    THE DEFENDANT:  Yes, sir.

10                   THE COURT:  All right.  And if you do appeal,

11  the presentence report will be placed in the record of this

12  proceeding under seal.

13         Okay.  And, all right, go ahead and ask the question.  I

14  don't know if I can answer it right now because I don't know the

15  situation, but the probation officers may be able to discuss it.

16         You had asked, Mr. Stamper, if that prohibits you on

17  supervised release from being around your own children.  Is that

18  what you asked me?

19                   THE DEFENDANT:  Yes, sir.

20                   THE COURT:  Okay.  How many children -- what

21  are your ages of the children?

22                   THE DEFENDANT:  I have two sons.  One of them

23  is three; one of them just turned one.

24                   THE COURT:  Okay.  And is there any kind of

25  custody arrangement with that?

26

1                       THE DEFENDANT:  I've got one son that's up in

2      Kentucky with my mother and my father.  And then I have another

3      child that's down here with my biological mom.

4                       THE COURT:  Okay.  And I don't know the

5      situation.  So maybe that can be addressed by probation or

6      Mr. Caldwell or by Ms. Cassidy.

7                       PROBATION OFFICER:  Your Honor, can I speak?

8                       THE COURT:  Sure.

9                       PROBATION OFFICER:  Your Honor, what we have

10     done is by the approval of the probation officer.  So normally --

11     because I've had several clients that are on supervision that have

12     children from a previous relationship.  And we just do it by a

13     case-by-case basis.

14          Basically, you know, whenever Mr. Stamper is released, it

15     would just be at the approval of the probation officer.

16                      THE COURT:  Okay.  Do you understand that?

17                      THE DEFENDANT:  Yes, sir.  And I have one more

18     question.

19                      THE COURT:  Okay.

20                      THE DEFENDANT:  Are my state charges being

21     dropped?

22                      THE COURT:  Don't know the answer.

23                      MR. CALDWELL:  You know, I --

24                      THE COURT:  Mr. Caldwell.

25                      MR. CALDWELL:  Your Honor, he -- obviously the

```
 1   U.S. Attorney has no influence over that.  This Court cannot order
 2   those dismissed.  I will certainly speak to the -- and provide a
 3   copy of this Court's judgment to the district attorney's office
 4   for the Fourth Judicial District.
 5        It is my experience that the Fourth Judicial District
 6   usually does not pursue criminal charges particularly with a
 7   sentence as long as this.  They typically would rather the federal
 8   government pay for Mr. Stamper's incarceration than for the State
 9   of Louisiana to pay for Mr. Stamper's incarceration.
10                  THE COURT:  Okay.  Do you understand that,
11   Mr. Stamper?  Mr. Caldwell is going to talk to -- talk to them.
12   We can't tell you anything with regard to that at this time.  We
13   don't know.  Okay?
14                  THE DEFENDANT:  Yes, sir.
15                  THE COURT:  All right.  Anything else?
16   (Discussion held off record)
17                  THE COURT:  Okay.  Thank you.  I do grant
18   Mr. Caldwell's request to attach -- was an unopposed request to
19   attach the two exhibits to the -- to the presentence -- to the
20   presentence under seal.  And that was the medical information.
21   All right.  At this time, the defendant is hereby remanded to the
22   custody of the U.S. Marshal to begin his term of imprisonment with
23   the Federal Bureau of Prisons.
24        Thank you.
25                  MR. CALDWELL:  Your Honor, would you make a
```

1    recommendation that the defendant go to the Lexington, Kentucky

2    facility or an appropriate medical facility.

3                         THE COURT:  I don't know anything about that

4    facility.  Can you tell me any more information about that?  Is

5    that a regular facility?  Is it just a medical facility?  I don't

6    know the situation.

7                         MR. CALDWELL:  I don't know much about the

8    Lexington facility.  Usually on the east coast everyone goes to

9    Buntner that has some type of medical.  If the Court would just --

10                        COURT REPORTER:  I'm sorry.  Goes to what?

11                        MR. CALDWELL:  Goes to Buntner in North

12   Carolina.

13                        COURT REPORTER:  Buntner?

14                        MR. CALDWELL:  Yeah.

15                        MR. CALDWELL:  But that's my experience.  But

16   on the other hand, if the Court would just recommend that he go to

17   an appropriate medical facility based on his medical background,

18   that would probably be sufficient, Your Honor.

19                        THE COURT:  Well, Ms. Cassidy, you want to say

20   anything?

21                        MS. CASSIDY:  Your Honor, only that I believe

22   BOP will be in the best position to make that determination.

23                        THE COURT:  That's exactly what I was going to

24   say is I don't normally mind, you know, requesting a facility, you

25   know, localized, closer to home, that kind of thing.  But with

1    this situation, I don't know what BOP would do.  I certainly don't
2    have any objection to it if BOP makes that determination.  But I
3    don't want to go on the record and make a recommendation for that
4    facility because I don't know that that's an appropriate facility
5    for the crime charged or the medical information that he has.
6                        MR. CALDWELL:  Well, we're just asking for a
7    recommend -- at this point understanding the Court's trepidation,
8    and a recommendation that he be placed in the appropriate medical
9    facility.
10                       THE COURT:  Well, the word -- I don't mind
11   recommending he be placed in the appropriate facility.  I don't
12   know that a medical facility is the one that BOP will recommend.
13   There are lots of others.  And so I don't want -- I don't know --
14   I guess what I'm saying is I don't know -- I'm going to let BOP
15   make that determination.  I certainly don't have any problem with,
16   it, but I'm -- I don't want to make that -- go on the record
17   making that determination because a medical facility may not be
18   what's appropriate here.  I don't know.  I'm going to let them
19   make that determination.
20         So, unfortunately, I'm not going to make that
21   recommendation but I don't have any objection.
22         Okay.  All right.  And he's remanded to the U.S. Marshal to
23   begin the term of imprisonment at the Bureau of Prisons at this
24   time.
25         Thank you.

1              MS. CASSIDY:  Thank you, Your Honor.

2              MR. CALDWELL:  Thank you, Your Honor.

3              THE COURT:  Thank you.

4

5

6                        *  *  *  *  *

7

8

9                       CERTIFICATE

10        I, Debbie Lowery, Certified Court Reporter, do certify that

11   the foregoing is, to the best of my ability and understanding, a

12   true and correct transcript from the proceedings of this matter.

13

14

15

16                          _____

17                          /s/Debbie Lowery

18                          7/14/2020

19

20

21

22

23

24

25

